**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                      :
                                                            :
**JOHNS-MANVILLE CORPORATION et al.**,                      :  Chapter 11
                                                            :
                                                            :  Case No. 82-11656 (CGM)
                                                            :
                                              *Debtor*.     :
------------------------------------------------------------x

------------------------------------------------------------x
**GENERAL MOTORS LLC**,                                     :
                                                            :
                                              *Plaintiff*,  :
                                                            :
                         v.                                 :
                                                            :
**MANVILLE PERSONAL INJURY                                  :
SETTLEMENT TRUST, EDWARD D.                                 :  Adv. No. 17-01032 (CGM)
ROBERTSON, JR., KIRK P. WATSON,                             :
and MARK A. PETERSON, IN THEIR                              :
CAPACITIES AS TRUSTEES**,                                   :
                                                            :
                                          *Defendants*.     :
------------------------------------------------------------x

**MEMORANDUM DECISION ISSUING DECLARATORY RELIEF AND ENJOINING
PLAINTIFF'S CLAIMS AGAINST DEFENDANTS**

**A P P E A R A N C E S :**

Bugbee & Conkle, LLP
405 Madison Ave., Suite 1900
Toledo, Ohio 43604
*Counsel for General Motors LLC*
By:    Dana R. Quick

Griffin Hamersky LLP
420 Lexington Ave
Suite 400
New York, NY 10170
*Co-Counsel for General Motors LLC*
By:    Michael D. Hamersky

Friedman Kaplan Seiler & Adelman LLP
7 Times Square
New York, NY 10036-6516
*Counsel for Defendants Manville Personal Injury Settlement Trust,*
*Edward D. Robertson, Jr., Kirk P. Watson, and*
*Mark A. Peterson, in their capacities as trustees*
By:    Timothy Michael Haggerty
       Jason C. Rubinstein

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Plaintiff General Motors LLC ("Plaintiff" or "GM") filed this adversary proceeding against the Manville Personal Injury Settlement Trust, Edward D. Robertson, Jr., Kirk P. Watson, and Mark A. Peterson, in their capacities as trustees (the "Manville Trust" or collectively "Defendants").  Am. Compl., ECF No. 5.[1]  The complaint seeks a declaratory order that GM's state court action against the Manville Trust pending before the Henry County Court of Common Pleas in Ohio, *General Motors LLC v. Anna R. Bolen, et al.*, Case No. 16CV0089 (the "Ohio Action"), is not enjoined by the channeling injunction contained in the Johns-Manville Corporation's chapter 11 plan of reorganization ("Manville Plan") and this Court's accompanying orders and corresponding confirmation order ("Confirmation Order").  Am. Compl. ¶ 26.  The Defendants filed a motion to dismiss the complaint, arguing this Court should abstain from issuing a declaratory judgment on prudential grounds.  Mot. Dismiss 13–14, ECF No. 12 (hereinafter "MTD").  In the alternative, Defendants argue that the Manville Plan's channeling injunction and the 1995 Trust Distribution Procedures ("TDP") bar GM's Ohio Action against the Manville Trust.  *Id.* at 15–21.  In conformity with the ruling this Court issued from the bench at the July 20, 2017 hearing, and for the reasons stated below, this Court finds that GM's Ohio Action against the Defendants is enjoined.

---

[1] Unless otherwise indicated, all citations to litigation documents are to the docket of adversary proceeding 17-09006.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), where matters concerning the administration of the estate are involved.  Additionally, this Court retains jurisdiction under the Manville Confirmation Order to clarify its prior orders and to enforce the injunctions issued in the Manville bankruptcy case.  Decl. Jason C. Rubinstein Ex. A ¶ 28, ECF No. 14-1 (hereinafter "Confirmation Order"); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citations omitted).

## BACKGROUND

**Johns-Manville Bankruptcy**

The history of the Johns-Manville case could easily be the subject of a multi-volume treatise.  Without delving into the minutiae, the bankruptcy case can be boiled down to the following:  Johns-Manville, once the largest producer and supplier of asbestos, filed for bankruptcy in 1982 along with many affiliated and subsidiary entities. *GAF Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 26. B.R. 405, 407 (Bankr. S.D.N.Y 1983), *aff'd sub nom. Johns-Manville Corp. v. Asbestos Litig. Grp. (In re Johns-Manville Corp.)*, 40 B.R. 219 (S.D.N.Y. 1984); *In re Johns-Manville Corp.*, 97 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). The filing was due to the overwhelming threat of asbestos-injury related litigation and the refusal of Manville's insurance carriers to payout on Manville's insurance coverage. *In re Johns-Manville Corp.*, 36 B.R. 743, 750 (Bankr. S.D.N.Y. 1984).

One of the largest concerns of the bankruptcy case was how to treat the claims of future asbestos victims who had not yet manifested symptoms of asbestos-related disease. *In re Johns-*

*Manville Corp.*, 36 B.R. 743, 745–46 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985). Instead of simply discharging their claims, the Johns-Manville bankruptcy created two separate asbestos trusts that existed solely to provide a recovery to asbestos claimants. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 640 (2d Cir. 1988); *In re Johns-Manville Corp.*, 68 B.R. 618, 621 (Bankr. S.D.N.Y. 1986); *In re Johns-Manville Corp.*, 97 B.R. 174, 176–77 (Bankr. S.D.N.Y. 1989). In an attempt to provide a recovery for all asbestos victims, and not merely the first ones to show up, the Manville Confirmation Order specifically finds that the "permanent injunction provided in Article IX, paragraph 9.2.A(3) of the Plan and which is set forth in paragraph 29 [of the Confirmation Order], is essential to the viability of the business operations of the Debtors and to the successful implementation of the Plan." Confirmation Order ¶ (aa).

The Confirmation Order also finds that "[t]he Court has the equitable and inherent power and authority to channel claims to a specific res and may limit the direct or indirect prosecution of such claims against the Debtors and prohibit parties in interest from attempting to circumvent the Plan and the orders of this Court." Confirmation Order ¶ (d). The Court further retains the right to "enjoin or otherwise limit future litigation associated with the Cases which could undermine and frustrate the Plan or the Debtors' reorganization." Confirmation Order ¶ (e).

The Confirmation Order confirms the Manville Plan, and also approves all of the agreements and documents that are attached as exhibits to the Plan, specifically authorizing the terms of each and every one of them. Among the agreements and documents approved by the Confirmation Order are the Manville Personal Injury Settlement Trust ("Manville Trust") and the Property Damage Settlement Trust ("PD Trust"). Confirmation Order ¶ (2)(a). The Manville Debtors were authorized to take any steps necessary to implement all of the terms of the Plan and the approved agreements and documents. Confirmation Order ¶ (3).

The Confirmation Order and Manville Plan create a channeling injunction that channels and preserves all future asbestos claims to the Manville Trust and PD Trust. The Confirmation Order enjoins all "Persons" from taking any of the specifically enumerated actions, "for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Claim, Interest or Other Asbestos Obligation . . . ." Confirmation Order ¶ (29). "Person" is defined in the Manville Plan to include "any individual, corporation, partnership, joint venture, association, trust, unincorporated organization or government or any agency or political subdivision thereof." Decl. Jason C. Rubenstein Ex. B at 38, ECF No. 14-2 (hereinafter cited as the "Manville Plan"). The channeling injunction prevents all "Persons" from

> [c]ommencing, conducting, or continuing in manner, directly or indirectly, any suit, action or other proceeding . . . against or affecting the Debtors, any of the Debtors' Subsidiaries, the Canadian Companies or any of the Settling Insurance Companies or any property of any of the foregoing or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or successor . . . .

Confirmation Order ¶ (29)(a). This definition not only enjoins suits against the Manville Debtors, their subsidiaries, and any settling insurers, it also enjoins suits against the Manville Trust and PD Trust, which, per Article IV of the Manville Plan, are direct transferees of property from the Manville Debtors. *See* Manville Plan Art. IV.

Further, the Confirmation Order enjoins all Persons from "[p]roceeding in any manner and any place with regard to any matter that is subject to resolution pursuant to the [Manville Trust] Claims Resolution Facility, except in conformity and compliance therewith," and provides substantially the same with regard to the PD Trust. Confirmation Order ¶ (e).

**GM's Ohio Action and Bankruptcy Complaint**

In the instant controversy, an employee of GM, Bobby Bolen ("Decedent"), died while working for GM on May 20, 2008. Am. Compl. ¶¶ 8–9, Ex. 1 ¶¶ 3, 7; MTD 7; GM's Resp. 4,

ECF No. 19.  The Decedent's widow, Anna Bolen ("Bolen"), filed a workers compensation claim with GM for Decedent's death, alleging he died of lung cancer and/or colon cancer as a result of his exposure to asbestos while working at GM.  GM's Resp. 4; Am. Compl. Ex. 1 ¶¶ 6–11.  The claim was allowed and GM has been making monthly payments to Bolen since October 20, 2010.  GM's Resp. 4.  In total, GM alleges that Bolen has received more than $170,000 in benefits from GM.  *Id.*; *see also* Am. Compl. ¶ 10.

Unbeknownst to GM, during the probate of Decedent's will, Bolen reached settlement agreements with several asbestos trusts, including the Manville Trust.  GM's Resp. 4–5.  GM claims Bolen failed to notify GM of these settlements and that Bolen was required to provide notice to GM under Ohio Revised Code § 4123.931.  *Id.* at 5; OHIO REV. CODE § 4123.931(G) ("Ohio Code").  GM also asserts that the Ohio Code makes the Manville Trust jointly and severally liable with Bolen for Bolen's failure to provide notice.  GM's Resp. at 5.

GM filed suit in the Henry County Court of Common Pleas naming Bolen and a variety of asbestos trusts as defendants, including the Manville Trust.  Am. Compl. Ex. 1 at 1–3.  In the Ohio Action, GM asserts that it is subrogated to the rights of Bolen under Ohio Code § 4123.931, that it has an interest in and lien upon all awards, settlements or damages received by Bolen under the worker's compensation claim, and that the other defendants are jointly and severally liable to GM for the full amount of its subrogation interest due to defendants' and Bolen's failure to give notice to GM of the settlements.  *Id.* at Ex. 1 ¶¶ 25–27.

Bolen filed a motion to dismiss the Ohio Action.  MTD 9–10.  GM then agreed to extend the time for all asbestos trusts to file an answer in the case.  *Id.* at 10; GM's Resp. 5.  Subsequently, the Manville Trust sent a letter to GM's counsel asserting that the Manville channeling injunction and the Trust Distribution Procedures ("TDP") barred the Ohio Action as

to the Manville Trust. MTD 10; GM's Resp. 6. After receiving correspondence from counsel for the Manville Trust, GM agreed to stay the Ohio Action so that it could file suits for declaratory relief in the various bankruptcy courts overseeing the asbestos trusts, including this Court. GM's Resp. 6; Am. Compl. Ex. B. In addition to this adversary proceeding against the Manville Trust, GM filed four other adversary proceedings against the ACandS Settlement Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, the United States Gypsum Asbestos Personal Injury Trust, and H.K. Porter Company, Incorporated. GM's Resp. 6; *See* Decl. Jason C. Rubinstein Exs. G, H, I; *see also General Motors LLC v. ACandS Settlement Trust (In re ACandS, Inc.)*, Ch. 11 Case No. 02-12687, Adv. No. 17-50192 (Bankr. D. Del. filed June 5, 2017); *General Motors LLC v. Owens Corning/Fibreboard Asbestos Personal Injury Trust (In re Owens Corning)*, Ch. 11 Case No. 00-03837, Adv. No. 17-50193 (Bankr. D. Del. filed Mar. 6, 2017); *General Motors LLC v. United States Gypsum Asbestos Personal Injury Trust (In re USG Corp.)*, Ch. 11 Case No. 01-02094, Adv. No. 17-50194 (Bankr. D. Del. filed Mar. 6, 2017); *General Motors LLC v. H.K. Porter Company, Inc. (In re H.K. Porter Co.)*, Ch. 11 Case No. 91-20468, Adv. No. 17-2064 (Bankr. W.D. Pa. filed Apr. 26, 2017). On May 12, 2017, the Manville Trust filed a motion to dismiss the adversary proceeding now pending before this Court.

When the Manville Trust filed its motion to dismiss here, the Ohio court had not yet ruled on Bolen's motion to dismiss. *See* MTD 13; Decl. Jason C. Rubinstein Exs. C, D, ECF Nos. 14-3, 14-4. By the time GM filed its response to the Manville Trust's motion to dismiss on June 23, 2017, Bolen's motion had been denied by the Ohio court. GM's Resp. 6; Decl. Gregory B. Denny Exs. 2, 3, ECF No. 20.

The Manville Trust's motion to dismiss argues the controversy between the Manville Trust and GM is not ripe for this Court's adjudication and urges this Court to exercise its discretion not to issue a declaratory opinion for prudential reasons.  MTD 13–15.  The Manville Trust argues that "it is unclear that the Ohio Action is going to proceed against *any* of the defendants there, much less progress to a point at which the Manville Trust's involvement or lack thereof becomes a material consideration for GM."  *Id.* at 13 (emphasis in original).

The Manville Trust claims a variety of circumstances may obviate the Manville Trust's need to be involved in the state court action.  The strongest factor cited in support is Bolen's motion to dismiss the Ohio Action.  *Id.* at 13, 14.  The Manville Trust admits that it would be required to file an answer in the state court case within 45 days if the motion to dismiss were denied.  *Id.* at 13.  The Manville Trust next asserts a series of "legal, factual, and procedural hurdles" GM will need to clear "before the Manville Trust's involvement in the Ohio Action becomes a material issue."  *Id.*  The Manville Trust alleges two of the other defendant-asbestos trusts sued by GM will be challenging the constitutionality of the Ohio subrogation statute that GM's Ohio Action relies on in the respective bankruptcy court adversary proceedings GM commenced against them.  *Id.* at 14; Decl. Jason C. Rubinstein Exs. H, I, ECF Nos. 14-8, 14-9.  Additionally, the Manville Trust speculates that the penalty provision of the Ohio subrogation statute may not even apply, as Bolen has not received the settlement funds from the asbestos trusts yet.  MTD 14; Decl. Jason C. Rubinstein Ex. D at 3, ECF No. 14-4.

The Manville Trust opines that the foregoing list is not exhaustive, and there are many other possible developments, including settlement, that "could result in the dismissal or resolution of GM's claims in the Ohio Action at a stage well before the Manville Trust's involvement in that action becomes an important consideration . . . ."  MTD 14.  The Manville

Trust asserts that declaratory relief is not yet necessary to settle the legal relationship between the Manville Trust and GM. *Id.*

In the alternative, the Manville Trust argues that if the Court does proceed to the merits, GM has no legal entitlement to the relief sought here, as the channeling injunction and TDP as adopted in 1995 bar GM's pending state court suit against the Manville Trust. *Id.* at 15–21.

In response, GM argues this Court should exercise its jurisdiction and issue the declaratory relief requested. GM's Resp. 7–10. Bolen's motion to dismiss in the Ohio Action has been denied. *Id.* at 7; Decl. Gregory B. Denny Ex. 3. As for the constitutional challenges, GM argues the burden is on the Manville Trust to prove the statute's unconstitutionality and that this is not a reason for this Court to abstain. GM's Resp. 8. GM asserts that the early stage of the Ohio Action and the lack of a determination on whether GM had notice does not make the Manville Trust unnecessary to the proceedings. *Id.* at 9. The Ohio Action is currently stayed as to the asbestos trusts pending decisions by the various bankruptcy courts. *Id.*; Decl. Gregory B. Denny Exs. 2, 4. It is proceeding against Bolen. GM's Resp. 9; Decl. Gregory B. Denny Ex. 4.

GM further states that this Court is in the best position to interpret the various orders and channeling injunction. GM's Resp. 10. GM argues the Ohio Action presents a justiciable issue and this Court should exercise its discretion to provide declaratory relief. *Id.*

In response to the Manville Trust's alternative argument that the channeling injunction and TDP bar GM's Ohio Action, GM asserts that liability under the Ohio Code does not arise from an act of the Manville Debtors, that it relates to an omission made by Bolen, and it arose pursuant to the Ohio Code section after the confirmation of the Manville Plan. *Id.* at 11–13. GM claims that the Ohio Code is "clear" that the alleged liability of the Manville Trust is not a subrogation interest. *Id.* at 11. GM attempts to distinguish this case from other Manville cases

where asbestos litigants who were enjoined sought damages "directly related to asbestos exposure." *Id.* at 12. GM claims that it is not barred by the channeling injunction. *Id.* at 13. GM does not directly address whether it is barred by the terms of the TDP.

The Manville Trust filed a reply on July 12, 2017 in further support of its motion to dismiss. Reply, ECF No. 25. The Manville Trust repeats its arguments that the channeling injunction and the 1995 adoption of the TDP prevent GM from suing the Manville Trust. *Id.* at 2–7. The Manville Trust also represents that this Court should abstain from issuing a declaratory ruling due to the fact the state court proceeding is in its infancy and has not progressed to a point where litigation by the Manville Trust would be necessary. *Id.* at 8–10.

## DISCUSSION

**The Court Will Exercise its Discretion to Issue a Declaratory Judgment**

As a general matter, the Manville Confirmation Order specifically reserves jurisdiction for this Court to interpret any disputes arising under the Manville Plan, the Trust Agreements, the Settlement Agreements, and all the corresponding exhibits. *See* Confirmation Order ¶ 28(b). The Manville Confirmation Order explicitly reserves jurisdiction for this Court to "enforce all orders, judgments, injunctions and rulings entered in connection with the Cases . . . ." Confirmation Order ¶ 28(j). Indeed, this Court has upon multiple occasions issued declaratory relief interpreting the scope of the channeling injunction.

One of the cases the Manville Trust relies heavily on in its motion to dismiss is directly on point and actually supports the Court's issuance of a declaratory judgment here. In that case, decided by this Court just last year on June 30, 2016, a subsidiary of a Manville Debtor, Graphic Packaging International, Incorporated ("Graphic"), was sued in state court by an asbestos tort plaintiff. Graphic filed for declaratory relief here, seeking a determination that the state court

suit was barred by the channeling injunction contained in the Manville Plan and Confirmation Order. *See In re Johns-Manville Corp.*, 552 B.R. 221 (Bankr. S.D.N.Y. 2016).

This GM case is no different than Graphic's case. It makes no difference that GM, the state court plaintiff, filed for declaratory relief at the Bankruptcy Court instead of the Manville entity. In fact, GM's decision to seek declaratory relief from this Court as soon as the Manville Trust raised the issue of the injunction was the correct course of action. Failure to first obtain a ruling from this Court that the injunction does not apply would result in a violation of the injunction, potentially subjecting the offending party to sanctions. *See, e.g.*, *In re Johns-Manville Corp.*, 97 B.R. 174, 181–82 (Bankr. S.D.N.Y. 1989). The Manville Trust's claim that there is no real case or controversy is completely off-base. GM has a right to this Court's determination that a pending lawsuit does or does not violate the terms of an existing injunction of this Court.

Even if this Court were to consider the Manville Trust's asserted procedural hurdles, one of the primary factors in support of abstention was Bolen's motion to dismiss in the state court. Bolen's motion to dismiss has since been denied. GM's Resp. 6; Decl. Gregory B. Denny Ex. 3. In the state court action, the Manville Trust requested an extension of time to file an answer to GM's complaint until after the adversary proceeding before this Bankruptcy Court is resolved. GM's Resp. 6; Decl. Gregory B. Denny Ex. 2. "Absent this agreed extension, the Manville Trust would be required to file a responsive pleading in the Henry County Action." GM's Resp. 6. If this Court were to refrain from interpreting the application of the injunction, the Manville Trust would be required to litigate the state court case. In other words, the Defendants' assertion that there is no immediate case or controversy in the state court action has been rendered inapplicable.

**GM's Ohio Action is Barred**

GM asserts that it derives a cause of action from the penalty provision of the Ohio Code § 4123.931. The part of the statute dealing with notice requires a claimant, here Bolen, to "notify a statutory subrogee and the attorney general of the identity of all third parties against whom the claimant has or may have a right of recovery . . . ." Ohio Code § 4123.931(G). The onus is on Bolen to notify GM and the attorney general. The statute goes on to provide that "[n]o settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee and, when required, the attorney general, with prior notice and a reasonable opportunity to assert its subrogation rights." *Id.* In subsection (G), the Ohio Code goes on to state that "[i]f a statutory subrogee . . . [is] not given that notice, or if a settlement or compromise excludes any amount paid by the statutory subrogee, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest." *Id.*

The terms of the Ohio Code trigger the provisions of the Manville channeling injunction pursuant to the Confirmation Order and Plan. The channeling injunction provided for in the Manville Confirmation Order prevents all "Persons" from

> [c]ommencing, conducting, or continuing in manner, directly or indirectly, any suit, action or other proceeding . . . against or affecting the Debtors, any of the Debtors' Subsidiaries, the Canadian Companies or any of the Settling Insurance Companies or any property of any of the foregoing or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or successor . . . .

Confirmation Order ¶ 29(a). This definition also enjoins suits against the Manville Trust and PD Trust, which, per Article IV of the Manville Plan, are direct transferees of property from the Manville Debtors. *See* Manville Plan Art. IV. As such, any suit that would have named a

Manville Debtor for liability on an asbestos claim is channeled to the Manville Trust, as is any proceeding against the Manville Trust.

The Confirmation Order enjoins all Persons from "[p]roceeding in any manner and any place with regard to any matter that is subject to resolution pursuant to the [Manville Trust] Claims Resolution Facility, except in conformity and compliance therewith," and provides substantially the same with regard to the PD Trust. Confirmation Order ¶ (e). In other words, any proceeding against the Manville Trust is governed by the Trust's applicable procedures for asserting a claim. *In re Joint E. & S. Districts Asbestos Litig. (Findley v. Falise)*, 878 F. Supp. 473, 486 (S.D.N.Y. and E.D.N.Y. 1995), *aff'd in part and vacated in part*, 78 F.3d 764, 774 (2d Cir. 1996).

GM is enjoined from suing the Manville Trust in the Ohio Action according to the terms of Manville's Confirmation Order and Plan either as a subrogee of Bolen's rights or in its own right as a claim for contribution. The Confirmation Order prevents all Persons from suing the Manville Trust or PD Trust "for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Claim, Interest or Other Asbestos Obligation . . . ." Confirmation Order ¶ 29. The definition of "Other Asbestos Obligation," in the Manville Plan "is meant to capture all future asbestos claimants." *In re Johns-Manville Corp.*, 552 B.R. 221, 250 (Bankr. S.D.N.Y. 2016). An "Other Asbestos Obligation," is defined as

> (a) all debts, obligations or liabilities (under any theory of law, equity or admiralty), other than AH Claims, for death, personal injuries or personal damages (whether physical, emotional or otherwise) to the extent caused or allegedly caused, directly or indirectly, by exposure to asbestos (alone or as contained in asbestos-containing products) and arising or allegedly arising, directly or indirectly, from acts or omissions prior to the Confirmation Date of one or more of the Debtors including, without limitation, all obligations or liabilities for compensatory damages (such as loss of consortium, wrongful death,

>   survivorship, proximate, consequential, general and special damages) and punitive damages and
>
>   (b) all warranty, guarantee, indemnification or contribution liabilities or obligations, if any, of any of the Debtors to any other Person to the extent that such warranties, guarantees, indemnifications or contribution responsibilities cover claims against such other Person that would, if such claims had been made directly against any of the Debtors, constitute Other Asbestos Obligations under Clause (a) above.

Manville Plan Ex. A at 10.

Bolen would have had an "Other Asbestos Obligation" as defined by the Confirmation Order and Plan. The cause of action Bolen may have asserted in regards to Manville would have been a claim for wrongful death resulting from her husband's alleged exposure to asbestos. Bolen was attempting to recover on a debt that would have been owed by one of the Manville Debtors, for the death of Bolen's husband, caused directly or indirectly by exposure to asbestos and which arose directly or indirectly from acts of one of the Manville Debtors, prior to the confirmation date. This reading is reinforced by the fact the Manville Trust agreed to compensate Bolen under the terms of the Manville Trust. As such, if GM were asserting a subrogation claim, GM would be stepping into the shoes of Bolen to assert Bolen's rights against the Manville Trust. GM's subrogation action would be an attempt to hold the Manville Trust liable for an "Other Asbestos Obligation."

GM's subrogation claim, if any, would be barred as against the Manville Trust in state court. In a subrogation suit, GM would be stepping into the shoes of Bolen to assert her claims against the alleged wrongdoer, here, one of the original Manville Debtors. GM's so-called subrogation suit against the Manville Trust would arise directly or indirectly from the acts of one or more of the Manville Debtors prior to confirmation of the Manville Plan. This is an Other Asbestos Obligation under subparagraph (b) that is subject to the channeling injunction. Manville Plan Ex. A. at 10.

Per the Ohio Code and the Manville Confirmation Order and Plan, GM does not have any subrogation rights to assert against the Manville Trust. GM's reliance on the Ohio Code § 4123.931(G) presumes that GM has subrogation rights against the Manville Trust. *See Galouzis v. Americoat Painting Co.*, 2009 Ohio App. LEXIS 179, at *8 (Ohio Ct. App. Jan. 14, 2009). While the Ohio Code proclaims that the "right of subrogation under this chapter is automatic, regardless of whether a statutory subrogee is joined as a party in an action by a claimant against a third party," Ohio Code § 4123.931(H), that does not mean the underlying subrogation rights are automatically created.

As stated by the Court of Appeals for the Seventh District of Ohio in *Galouzis*, the right of subrogation depends on a determination of all the rights and obligations of the parties in the underlying litigation. *Galouzis*, 2009 Ohio App. LEXIS 179, at *8. There must be a finding of liability against the third-party. The Ohio Supreme Court has held that Ohio Code § 4123.931(A), "must be interpreted to provide that the right of the statutory subrogee to recover its subrogation interest is an independent right, but that the right is subrogated in the sense that the statutory subrogee can recover from the claimant and/or the third party only if the third party is liable to the claimant in tort." *Ohio Bureau of Workers' Comp. v. McKinley*, 956 N.E.2d 814, 820 (Ohio 2011).

Here, the channeling injunction exists to prohibit all litigation arising out of any alleged exposure to asbestos. There was no litigation between Bolen and the Manville Trust, and there is no finding as to liability or damages. The Manville Plan and Confirmation Order channel all asbestos claims to the Manville Trust. Were it not for the channeling injunction and the Manville Trust, there would be no liability to litigate—the future asbestos claims would have been discharged in the bankruptcy. Neither Bolen nor GM has the right to sue the Manville

Trust to determine the Manville Debtors' liability to Bolen in tort for her husband's alleged asbestos exposure. The channeling injunction prohibits Bolen from suing the Manville Trust to determine Manville's liability just as much as it does GM.

While the channeling injunction would bar any subrogation claim against the Manville Trust, in fact, the claim GM is asserting in the Ohio Action against the Manville Trust is a claim for contribution. GM is not standing in the shoes of Bolen to assert Bolen's rights against the Manville Trust. *See McKinley*, 956 N.E.2d at 819–20. GM is instead attempting to sue both Bolen and the Manville Trust for failure to notify GM that the Manville Trust also agreed to pay Bolen a settlement on her asbestos claim. GM, having paid out on Bolen's wrongful death claim, is now seeking to share the burden of Bolen's recovery with the Manville Trust.

Per the very language of the Ohio Code, if GM was "not given that notice, or if a settlement or compromise excludes any amount paid by the statutory subrogee, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest." Ohio Code § 4123.931(G). The Ohio Code dictates that a lack of notice to GM would result in joint and several liability for both the Manville Trust and Bolen. It is well established that a judgment of joint and several liability will lead to a claim for contribution. "Contribution is the proportionate sharing of liability among tortfeasors." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 204, 207 (2d Cir. 1987) (citations omitted).

The Manville Plan makes a claim for contribution "caused or allegedly caused, directly or indirectly, by exposure to asbestos . . . and arising or allegedly arising, directly or indirectly, from acts or omissions prior to the Confirmation Date of one or more of the Debtors," an "Other Asbestos Obligation." Manville Plan Ex. A. at 10. The channeling injunction prohibits any suits to recover on an "Other Asbestos Obligation." Confirmation Order ¶ 29. The protection of the

Page **16** of **18**

channeling injunction extends to the Manville Trust, as a transferee of the Manville Debtors' property, and pursuant to the plain terms of the Confirmation Order, which prohibit any Person from suing the Manville Trust other than in accordance with the Trust's governing documents. Confirmation Order ¶ (e). As such, a claim for contribution is explicitly covered by the channeling injunction in the Manville Plan as an Other Asbestos Obligation. Based on the language of the Ohio Code, GM's cause of action against the Manville Trust is a claim for contribution that is barred by the channeling injunction.

As this Court has repeatedly held, GM may only pursue the Manville Trust pursuant to the terms of the TDP. In 1989, this Court held that "all AH claims and Other Asbestos Obligations are channeled to the Manville Trust, and such claimants "may proceed only against the Trust to satisfy their claims." *In re Johns-Manville Corp.*, 97 B.R. 174, 177 (Bankr. S.D.N.Y. 1989). These claimants "may only commence an action against the Trust in accordance with the Claims Resolution Procedures." *Id.* The TDP's provisions prevent GM from suing the Manville Trust.

The TDP was adopted in 1995 in joint litigation before the Southern and Eastern Districts of New York, and substantially affirmed on appeal to the Second Circuit. *See In re Joint E. & S. Districts Asbestos Litig. v. Falise*, 878 F. Supp. 473, 486 (S.D.N.Y. and E.D.N.Y. 1995), *aff'd in part and vacated in part sub nom.*, *In re Joint E. & S. Districts Asbestos Litig.*, 78 F.3d 764, 774 (2d Cir. 1996) (finding "error only in the Trial Courts' refusal to decide which set-off rules are to be applied in Maryland cases."). The joint District Courts held that according to the TDP, "[n]o proceedings may be commenced or prosecuted against the Trust in any state or federal court arising from claimed exposure to asbestos, except as specifically set forth in the TDP." *In re Joint E. & S. Districts Asbestos Litig. v. Falise*, 878 F. Supp. at 573. In other words, the

language of the TDP controls the permissibility of litigation and whether GM may pursue the Manville Trust.

GM may not sue the Manville Trust in the Ohio Action. GM's rights against the Manville Trust are limited to the terms set forth by the TDP. The Manville Trust's motion to dismiss is now mooted by this Court's issuance of a declaratory judgment.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is moot. GM may not sue the Manville Trust in the Ohio Action. GM's rights against the Manville Trust, if any, are limited to the terms of the TDP and GM must follow the procedures outlined in the TDP. The parties were directed to submit an order in conformity with this opinion at the hearing held before this Court on July 20, 2017, which will be entered separately by the Court.

**Dated: July 24, 2017**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**